IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KONSTANTINOS APOSTOLOU,** | : | |
| Plaintiff, | : : : | |
| v. | : : | Civil Action No. 16-4812 |
| **CITY OF PHILADELPHIA,** | : : | |
| Defendant. | : | |

## **DEFENDANT CITY OF PHILADELPHIA'S TRIAL BRIEF**

Pursuant to Court's March 20, 2019 Final Pretrial Order, Defendant, City of Philadelphia, submits this trial brief setting forth the facts and legal issues to be tried to a jury.

### I.  Defendant's Statement of the Facts

The City of Philadelphia Police Department maintains a policy — Directive 97 — designed to protect PPD employees from discrimination and to provide a process for employees who feel they have suffered discrimination to file a complaint. This policy existed when Plaintiff allegedly experienced discrimination beginning in October 2014. Plaintiff did not avail himself of Defendant's internal complaint process until June 15, 2015, at which point he alleged he suffered a discriminatory hostile work environment due to the conduct of his supervisor Sergeant McLain. Specifically, Plaintiff alleges that starting in October of 2014 Sergeant McLain engaged in a number of unwanted physical contacts with plaintiff — including touching and grabbing Plaintiff's buttocks, rubbing Plaintiff's shoulders, touching and rubbing Plaintiff's face — as well unprofessional, and allegedly discriminatory, verbal comments — including a discussion of Greeks inventing anal sex, telling Plaintiff he could not get Plaintiff pregnant, comments about

1

touching Plaintiff's buttocks not being gay "if it was good game," and asking Plaintiff if Plaintiff's boyfriend liked Plaintiff's beard.

The City of Philadelphia took prompt remedial action as soon as Plaintiff made his first EEO complaint. The City interviewed Plaintiff the day after he made his complaint. Then, within 10 days of that interview, the City transferred Sergeant McLain from Plaintiff's squad to a squad where he would no longer be Plaintiff's regular supervisor and would "crossover" with Plaintiff only four days a month. Moreover, the City, during its four months investigation, interviewed 40 individuals, and through its diligence, concluded that Sergeant McLain had violated the City's policies and procedures, and punished McLain with a 20-day suspension and a permanent transfer to a position where McLain has had no contact, on- or off-duty, with Plaintiff.

The City likewise took prompt remedial action when Plaintiff made his August 3, 2016, complaint. On August 3, 2016, Plaintiff filed a second internal EEO complaint regarding additional harassment Plaintiff alleges to have suffered at the hands of Sergeant McLain. In this second complaint, Plaintiff claims only four examples of allegedly wrongful conduct, all of which occurred after he made is first complaint in June of 2015: (1) McLain made a comment about not being able swear at roll call because people are sensitive; (2) McLain made a comment about wishing he could settle things in the locker room or basement; (3) McLain would sit approximately 20 feet from the SEPTA loop near a bathroom Plaintiff wanted to use; and (4) McLain would punch Plaintiff in the back of his ballistic vest at roll call when checking to see if Plaintiff was wearing his ballistic vest.

Plaintiff was undeniably aware of this policy as he claims to have been subjected to continued harassment by Sergeant McLain because he had availed himself of same policy on

June 15, 2015. Internal Affairs division again conducted a fulsome investigation into Plaintiff's claims, aimed at eliminating any discrimination in the workplace.

Here, unlike Plaintiff's allegations in his June 15, 2015 complaint, which referenced his national origin and were arguably directed at Plaintiff because of his sex, Plaintiff has no evidence to support a claim that the four examples of allegedly discriminatory conduct that occurred after he made his first complaint were motivated by any animus towards his sex or national origin. Sergeant McLain did not even directly address the two verbal comments to Plaintiff, according to the Plaintiff and those who witnessed it. Additionally, Plaintiff has nothing to support an accusation that the alleged back-punching by Sergeant McLain, and Sergeant McLain's sitting near the SEPTA loop bathroom, were motivated by Plaintiff's national origin or sex.

Finally, Plaintiff also alleges in his August 3, 2016 internal complaint that he was denied a transfer request to joint a specialized plainclothes narcotics unit ("NETS") at his district as retaliation for filing his June 2015 EEO complaint.  In reality, Plaintiff's transfer request was not denied; Plaintiff, along with others who applied to join NETS, remained in consideration for openings in NETS until it was closed on or around April 18, 2018.

## II.     Hostile Work Environment

To establish a *prima facie* case of hostile work environment based on sex or national origin, Plaintiff must demonstrate that (1) he suffered intentional discrimination because of his status as a member of a protected class; (2) discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) the discrimination would have detrimentally affected a reasonable person of the same protected class in the same position; and (5) the existence of *respondeat superior* liability. Kunin v. Sears Roebuck and Co., 175 F.3d 289, 293 (3d Cir. 1999).

3

### III.  The City's *Faragher-Ellerth* Affirmative Defense

The Third Circuit Court of Appeals has established that "[a]n employer is not always vicariously liable for a hostile work environment" Kunin, 175 F.3d at 293. It is well-recognized that an employer is vicariously liable to a victimized employee "for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998). However, in cases where the supervisor charged with creating the hostile work environment did not take tangible employment action against the employee, the employer may raise as an affirmative defense to liability where an employer "'exercised reasonable care to avoid harassment and to eliminate it when it might occur' and the complaining employee 'failed to act with like reasonable care to take advantage of the employer's safeguards and otherwise to prevent harm that could have been avoided,'" Jones v. SEPTA, 796 F.3d 323, 328 (3rd Cir. 2015). This affirmative defense is commonly referred to as the Faragher-Ellerth defense.

### IV.  Alleged Violation of Title VII – Retaliation

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that: "(1) [he] engaged in protected activity; (2) the employer engaged in conduct constituting an adverse action either contemporaneous with or after the protected activity; and (3) a causal connection between the protected activity and the adverse action." Jones v. SEPTA, 796 F.3d 323, 330 (3d Cir. 2015). The Third Circuit has noted that two primary factors for determining if a causal connection between a materially adverse action and the protected activity: timing and evidence of ongoing antagonism. Wadhwa v. Sec'y, Dep't of Veterans Affairs, 505 F. App'x 209, 215 (3d Cir. 2012)(citing Farrell v. Planters Lifesavers Co., 206 F. 3d. 286, 300 (3d. Cir. 2007). In short, a Plaintiff can establish a causal connection due to a temporal proximity between the

protected activity and the alleged adverse employment action, or though evidence that the employer engaged in a pattern of antagonism during the intervening period. Wadhaw, 505 F. App'x at 215.

Courts have held that even a period of less than one month between protected activity and an adverse employment action was not "unusually or unduly suggestive" of retaliation, absent any other evidence of intervening period of antagonism. See McLaughlin v. Fisher, 277 Fed. Appx. 207, 218 (3d Cir. 2008). In the absence of suggestive temporal proximity, courts may also examine the proffered evidence "as a whole to raise an inference of causation." Marra v. Philadelphia Housing Auth., 497 F.3d 286, 302 (3d Cir. 2007).

**V.    Alleged Violation of Title VII – Retaliatory Hostile Work Environment**

To establish a retaliatory hostile work environment claim, plaintiff must prove that: (1) he suffered intentional discrimination because of his protected activity; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) it would have detrimentally affected a reasonable person in like circumstances; (5) he suffered materially adverse action or actions in relation to the hostile work environment; and (6) a basis for employer liability is present. See Komis v. Perez, No. 11–6393, 2014 W L 3437658, at 1 (E.D.Pa. July 15, 2014) (citing Jensen, 435 F.3d at 444). Petrulio v. Teleflex Inc., No. CIV.A. 12-7187, 2014 WL 5697309, at 10 (E.D. Pa. Nov. 5, 2014).

Title VII is not a generalized "civility code." Faragher, 524 U.S. at 788.  The statute prohibits severe or pervasive harassment; it does not mandate a happy workplace.  Moore v. City of Philadelphia, 461 F.3d 331, 346 (3d Cir. 2006), as amended (Sept. 13, 2006).  Occasional insults, teasing, or episodic instances of ridicule are not enough, as they do not "permeate" the workplace and change the very nature of the plaintiff's employment. See Brooks v. CBS Radio, Inc., 342 F. App'x 771, 777 (3d Cir. 2009). "[O]ffhand comments, and isolated incidents (unless

5

extremely serious) are not sufficient to sustain a hostile work environment claim. Rather, the conduct must be extreme to amount to a change in the terms and conditions of employment." Caver v. City of Trenton, 420 F.3d. 243, 262 (3d Cir.2005).

In analyzing whether conduct is severe or pervasive, the Courts have weighed a number of factors including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Brooks, 342 F. App'x at 777. "When ascertaining whether the severity and pervasiveness of alleged discrimination are sufficient to constitute a hostile work environment, the court looks at the totality of the circumstances rather than concentrating on individual incidents. Alers v. City of Philadelphia, 919 F. Supp. 2d 528, 544 (E.D. Pa. 2013) (citing Peace-Wickham v. Walls, 409 Fed.Appx. 512, 519 (3d Cir. 2010).

Respectfully Submitted,

Date: June 7, 2019      *s/ Frank E. Wehr II*
Frank E. Wehr II
Assistant City Solicitor
City of Philadelphia Law Dept.
Labor and Employment Unit
1515 Arch Street, 16th Floor
Philadelphia, PA 19102
215-683-5183 ▪ (fax) 215-683-5099

## **CERTIFICATE OF SERVICE**

      I, Frank E. Wehr II, hereby certify that on this date I caused the foregoing Defendant's Trial Brief to be filed electronically, where it is available for viewing and downloading.

                                          Respectfully Submitted,

                                          CITY OF PHILADELPHIA
                                          LAW DEPARTMENT

Date: <u>June 7, 2019</u>                    BY:  <u>*s/ Frank E. Wehr II*</u>
                                                              Frank E. Wehr II
                                                               Assistant City Solicitor