IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KONSTANTINOS APOSTOLOU,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 16-4812-NIQA |
| | : | |
| **CITY OF PHILADELPHIA,** | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF KONSTANTINOS APOSTOLOU'S
TRIAL MEMORANDUM**

**I.   INTRODUCTION**

This is a Title VII action based on discrimination on account of sex (Male) and discrimination on account of national origin (Greek), and further, it is based on physical and adverse employment action retaliations against Plaintiff for his complaints of those discriminatory acts. This action also includes causes under the Pennsylvania Human Relations Act, 43 P.S. Section 951, *et seq.*, over which this Court has supplemental jurisdiction.

Philadelphia Police Officer Konstantinos Apostolou has three claims:

(1) *hostile-work-environment* (Officer Apostolou was verbally and physically harassed, touched, and abused by Sgt. Jay McLain on account of sex and Greek national origin for eight months);

(2) *retaliatory hostile-work-environment* (after Plaintiff made his first EEO complaint he was then brutally retaliated against by Sgt. McLain – by McLain's repeated punching at roll calls), and

1

(3) *retaliation – adverse employment action* (Plaintiff was crudely and summarily denied a qualified and well-earned transfer to NETS, the elite narcotics unit, by Sgt. Matthew Lowe solely because he was, in Sgt. Lowe's words, a "Greek bearded mother fucker….He put EEO complaints in").

## II.  FACTS

### *HOSTILE-WORK-ENVIRONMENT CLAIM*

Officer Apostolou was sexually touched and harassed by his immediate supervisor, Sgt. Jay McLain, from October 2014 through June 14, 2015. Sgt. McLain's abuse consisted of squeezing the Plaintiff's buttocks, massaging his shoulders, stroking his face, and making constant homosexual-themed comments, like as to the ancient Greek's putative invention of anal sex.

Jay McLain is a very muscular, self-styled "macho" man who is widely known in the Department as a frightening, volatile, gun-loving, violent, menacing, sexually inappropriate, physically inappropriate and "crazy" Sergeant (attributes like "bipolar", "roid rage" and similar are attached to him by colleagues). Thus, the abuse frightened and utterly demoralized Officer Apostolou, who is an exemplary Officer. Officer Apostolou was literally afraid to report McLain's abuse.

Officer Apostolou's dormant Irritable Bowel Syndrome was violently reignited and became a daily part of his life (memorialized by diary). Elizabeth Apostolou, his wife, has testified as to how the abuse haunted and affected her husband, mentally and physically.

Officer Apostolou reported it on June 14, 2015 to McLain's superior, Lt. Cesare, and then the EEO. The Lieutenant will testify that he was familiar with McLain's pertinent, disturbing

traits and in fact had himself been the object of some of it, and, that **it was reasonable for the Plaintiff to fear retaliation for reporting.**

On October 8, 2015, Sgt. McLain was found to have created a hostile work environment and, eventually, was suspended for 20 days and transferred.

### *RETALIATORY-HOSTILE-WORK-ENVIRONMENT CLAIM*

The abuse of Officer Apostolou continued after (*and because of*) his June 14, 2015 EEO report. Unprecedentedly, the two were only partly separated. (And the reason for moving McLain at all was to solve a love triangle problem that Capt. McLean had.) Captain McLean kept McLain in the same District, same building, but moved him to a different squad – where he wielded power over Officer Apostrolou at roll calls at least 4 times a month. At the roll calls, with all other Officers in the eyes-straight-ahead pose, McLain would forcefully punch Officer Apostolou under "vest check" pretense. The punching happened on about 25 occasions. This physically hurt and terrorized the Plaintiff. The EEO reporting had actually made things worse.

In July 2015, Officer Apostolou went to the **EEOC** about this physical retaliation. The EEOC administratively botched and effectively lost this claim (documentary evidence proves this). In December 2015, the Officer visited the EEOC and obtained a Charge of Discrimination as to the original hostile-work-environment, the aforesaid retaliation-by-punching, and the retaliation by denial of transfer to NETS (see next section).

### *RETALIATION CLAIM – DENIAL OF TRANSFER*

Officer Apostolou applied for transfer to the elite, prestigious, remunerative, plainclothes Narcotics Enforcement Team unit (NETS) in July 2015. The Plaintiff was eminently qualified and was already NETS-trained.

3

The head of the NETS unit was Sgt. Matthew Lowe. Sgt. Lowe not only explicitly retaliated against Officer Apostolou for his EEO Complaint by denying the transfer, but he has clearly perjured himself about the issue.

Police Officer Thomas Farrell was present in the NETS squad room when Officer Apostolou's transfer request was discussed. Officer Farrell has testified that Sgt. Lowe stated: **"Not the Greek bearded mother fucker…. He put EEO complaints in".**

At deposition, Sgt. Lowe falsely attributed that statement to one Officer Kevin Doerr. At his own deposition, Doerr vehemently and indignantly denied that he ever said such a thing.

Although neither rank nor base pay is increased by a transfer to NETS, this Court concluded at the Summary Judgment stage that the transfer denial could be an adverse employment action since the transfer was not a purely collateral transfer. The overtime pay, prestige, and opportunities that Officer Apostolou has lost are substantial.

## **DAMAGES (exclusive of attorney fees and costs)**

- Extreme physical, emotional and psychological pain and suffering, including: the debilitating re-igniting of Plaintiff's Irritable Bowel Syndrome, stress, humiliation, fear, anger, depression, anxiety, and, enduring about 25 hard, scary punches. Dr. Paul Dikiun's will testify as to the stress and depression caused by McLain. Dr. Dikun specialized in treating police officers.

- Loss of earnings due to the explicitly retaliatory denial of transfer to Narcotics Enforcement Team (NETS). Loss of *additional* overtime attendant to the NETS position (and its successor Violent Crime unit) is estimated at $25,000 per year.

       Absent the adverse employment action of denial of Plaintiff's July 2015 transfer request, he likely would have assumed the position around August 2015. That results in a loss of almost 4 years of the additional overtime by time of trial.

### III. LEGAL ISSUE:
### THE CITY'S UNAVAILING FARAGHER-ELLERTH AFFIRMATIVE DEFENSE

The City's *Ellerth* defense was unavailing at the summary judgment phase and if pursued at trial will be seen even more so before a lay jury. The 8 month "delay" in reporting the original abuse was completely justified and understandable. Indeed, Lt. Cesare – Sgt. McLain's supervisor - himself testified that Officer Apostolou had reason to be frightened of retaliation by McLain.

Moreover, events subsequent to the June 2015 reporting prove how justified Officer Apostolou was, and how violent Sgt. McLain is. The Officer and his supervisor/abuser were not separated. Officer Apostolou was punched about 25 times by McLain at roll calls (for reporting the abuse). Additionally, there was a subsequent unrelated incident wherein McLain was found guilty of physically threatening fellow Sgt. McWilliams. In general, the evidence will be that McLain is a strange, scary man with power.

In Newsome v. Admin. Office of the Courts of the State of New Jersey, 51 Fed. Appx. 76, 80 (3d Cir. 2002), the Court took pains to point out that the potential reasonableness of even *a four year delay*. The Third Circuit cited *Cardenas v. Massey,* 269 F.3d 251 (3d Cir.2001), where the Mexican-American plaintiff was subjected to repeated ethnic slurs. Pertinently to our case, the Third Circuit wrote that one of the reasons Cardenas's four year delay was found reasonable was because of his fear of "branding himself a trouble maker":

5

> We note that our recent decision in *Cardenas v. Massey,* 269 F.3d 251 (3d Cir.2001)--which was issued more than a year after the District Court rendered its judgment here is not to the contrary. In *Cardenas,* a case which also involved allegations of a hostile work environment brought by an employee of the AOC, this Court determined that whether the employee, Cardenas, acted reasonably in failing to report the alleged harassment was a question of fact for a jury because Cardenas had complained informally to the supervisors who allegedly harassed him, he had complained to the AOC's Director (Lipscher), and he had complained to the EEO Officer (Battle) prior to filing a formal complaint some **four years** after the alleged harassment began. Battle refused to address Cardenas's concerns until Cardenas filed a formal complaint. In those circumstances, Cardenas's reluctance to file a formal complaint for fear of aggravating the situation or **branding himself a troublemaker** were arguably not unreasonable. *See* 269 F.3d at 267.

Newsome, 51 Fed. Appx. at 81; emphasis added. Police officers are especially sensitive to being branded "troublemakers" among their own colleagues. While being effectively branded as such was not at all a *controlling* consideration in Officer Apostolou's not reporting for eight months, it was indeed a real, operative fact.

In 2006, the Third Circuit again endorsed fear of being branded a troublemaker as constituting reasonable delay:

> We cannot say, as a matter of law, that Falcon prevailed on its affirmative defense. **Reasonableness is a paradigm question of fact,** and material facts are in dispute....
>
> As for Clegg, she waited approximately four months before reporting Levers' offensive conduct, and, we note, did not report much of the conduct that she later alleged in her complaint and her deposition. A delay in reporting may support a finding that an employee failed to take advantage of safeguards. See Cardenas v. Massey, 269 F.3d 251,267 (3d Cir. 2001). In Cardenas, however, we ultimately found that the plaintiffs significant delay in reporting the harassment was not necessarily unreasonable. Cardenas, 269 F.3d at 267 ("In these circumstances, Cardenas' reluctance to file a formal complaint for **fear of aggravating the situation or branding himself a troublemaker might not have been unreasonable.").** Here, as in Cardenas, the reasonableness of the delay in reporting is a question of fact for a jury to decide.

6

Clegg v. Falcon Plastics, Inc., 174 Fed. Appx. 18 (3rd Cir. 2006, Third Circuit No. 05-1826).

It is worth noting that the City has no evidence that Sgt. McLain was given any sexual harassment training, or any *training* in what constitutes harassment. *See* Thornton v. Fed. Express Corp., 530 F.3d 451,456 (6th Cir. 2008) for the proposition that training is needed to satisfy the first part of the first *Ellerth* prong. Also, *see* Mancuso v. City of Atlantic City, 193 F. Supp. 2d 789,804 (D.N.J. 2002) (holding that the mere promulgation of an anti-sexual harassment policy is not sufficient to avoid liability where there was a lack of **an anti-sexual harassment training program).** Training is necessary because in today's world, still, employers just cannot assume that employees understand what harassment is, even if it seems obvious to others. *See* Cadena v. Pacesetter Corp., 224 F.3d 1203, 1210 (10th Cir. 2000), where the Court found a jury issue as to whether the employer made a good faith effort to educate its employees about its non-discrimination policy. The good faith effort was questioned because the manager who was responsible for sexual harassment training believed that a male supervisor would not commit sexual harassment if he exposed his genitalia to a female subordinate, as he apologized.

In our case, we have a situation where McLain would have us believe that he just didn't there was anything wrong with a person in power arrogating to himself the freedom to hug, kiss, and buttock-smack those he lorded over. And Lt. Cesare, his supervisor, knew about these perverse proclivities and did not do anything. How did the City get to this sorry pass? Where was the employer's reasonable care in preventing harassment? Where is the evidence of effective training of McLain, let alone evidence of any training? The record is empty.

The City also fails to meet the Ellerth requirement of prompt remedial action. Lt.

Cesare testified that the two should have been separated completely, not left in a four day a month situation where McLain could continue to abuse the Plaintiff at roll calls - as he did. Under the undisputed facts, the claim that prompt remedial action was taken is almost Kafkaesque.

Where McLain's supervisor testifies unequivocally as to what is *required* protocol, lay common sense will support the proposition that the Plaintiff and McLain should reasonably have been separated to prevent future harm (which ensued).

The City, although it produced a Declaration from Captain McLean, has no evidence to rebut the fact that the ineffective transfer of McLain was to solve a romantic/sexual conflict, not to take remedial action as to the complaints against McLain. Also not rebutted in any way, is the fact that Captain Mclean took no action when informed of Plaintiff's complaint to Lt. Cesare. Since under the harassment policies, the Plaintiff could meet his burden by reporting to Capt. McLean, or, the EEO, the assertion of the affirmative defense fails simply because any report to Capt. McLean would have been (and was) unavailing.

In sum, the Plaintiff did not have some vague, subjective fear of retaliation. The uniquely volatile, violent, vengeful character McLain made the fear about as real as it could be. As to prompt remedial action, the record speaks for itself.

Throughout this case, City has made perfunctory arguments on the punching/retaliation claim, and a "lack" of reporting. In reality, the Plaintiff went **beyond** departmental reporting of the punching, because he had been given the unmistakable message

that he would not be helped with just EEO reporting. In July or August 2015, **he made his complaint to the EEOC itself.** (The EEOC mishandled the complaint by calling it Apostolou v. Homewood Suites, an utter error).

                                        Respectfully submitted,

                                        s/Christopher D. Mannix
                                        Christopher D. Mannix
                                        1735 Market Street
                                        Suite 3750
                                        Philadelphia, PA 19103
                                        215 564 4300
                                        mannix@mannixlaw.net
                                        Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I, Christopher D. Mannix, Esquire, do hereby certify that the foregoing Plaintiff's Trial Memorandum was served upon all counsel of record via electronic filing, and is available to same on the ECF system.

s/Christopher D. Mannix
Christopher D. Mannix, Esquire

June 7, 2019